Denise **BRODEUR**

v.

**NMC HOMECARE**

and

**CNA Insurance Co.**

Supreme Judicial Court of Maine.

Argued Nov. 14, 1994.

Decided Feb. 10, 1995.

N. Paul Gauvreau (orally), Lewiston, for plaintiff.

Mark V. Franco (orally), Thompson & Bowie, Portland, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA and LIPEZ, JJ.

LIPEZ, Justice.

The employer, NMC Homecare, appeals from a decision of the Workers' Compensation Board granting the employee Denise Brodeur's petition for award. Because we conclude that it was not error for the hearing officer to include concurrent wages earned as a real estate broker in Brodeur's average weekly wage, we affirm the decision.

In 1991 Brodeur suffered a totally incapacitating work-injury while employed by NMC Homecare as an account manager and salesperson. The parties stipulated that her average weekly wage from NMC Homecare was $740.29. In August 1992 Brodeur filed a petition for award which was granted in 1993. The hearing officer found that, at the time of her injury, Brodeur was "concurrently self-employed as a real estate broker" with ERA Worden Realty and that her average weekly earnings as a broker were $410.65. Adding her weekly earnings from both employments, the hearing officer found that Brodeur's average weekly wage was $1,150.94. The hearing officer denied NMC Homecare's motion for findings of fact and we granted the employer's petition for appellate review pursuant to 39–A M.R.S.A. § 322 (Supp.1994).

■ "An administrative agency's interpretation of a statute administered by it is entitled to great deference and will be upheld on appeal unless the statute plainly compels a different result." *Nielsen v. Burnham & Morrill, Inc.*, 600 A.2d 1111, 1112 (Me.1991). The hearing officer in this case applied subsection 2(2)(D), that provides that

> [w]here the employee is employed regularly in any week concurrently by 2 or more *employers*, for one of whom he works at one time and for another he works at another time, his "average weekly wages"

shall be computed as if the wages, earnings or salary received by him from all such employers were wages, earnings or salary earned in the employment of the employer for whom he was working at the time of the injury.

39 M.R.S.A. § 2(2)(D) (1989) (emphasis added).[1] NMC Homecare contends that Brodeur is not "employed" by two or more "employers" for purposes of subsection 2(2)(D) because, as a real estate agent, she was not an "employee" under the Act. NMC Homecare relies specifically on subsection 2(5)(D), that provides "[t]he term 'employee' does not include a real estate broker or salesman whose services are performed for remuneration solely by way of commission, provided that the broker or salesman has signed a contract with the agency indicating the existence of an independent contractor relationship." P.L.1983, ch. 84 (effective September 23, 1983), *codified as* 39 M.R.S.A. § 2(5)(D) (1989). We agree with NMC Homecare that, in her capacity as a real estate broker, Brodeur was not an "employee" as that term is defined in subsection 2(5)(D). The issue in this case, however, is whether Brodeur has "2 or more employers" for purposes of calculating her average weekly wage under subsection 2(2)(D).

NMC Homecare argues that, pursuant to our analysis in *Harding v. Sheridan D. Smith, Inc.*, 647 A.2d 1193, 1194 (Me.1994), a noncovered self-employee cannot be considered to have an employer. We disagree. In *Harding*, we held that, consistent with the underlying policy of the Workers' Compensation Act to provide a full recovery to employees for work-injuries subject only to express limitations provided in the Act, a worker who aggravates a prior work-injury while performing work in noncovered self-employment may seek full recovery against a prior employer, as long as the previous work-injury is a causative factor in the employee's ongoing incapacity. *Id.* In a footnote, we stated that "[t]he word 'employee' is defined in 39

M.R.S.A. § 2(5)(A) to include 'every person in the service *of another* under any *contract of hire....*' *Id.* ... A 'sole proprietor' is not an employee unless that person 'elects to be personally covered by' the Act. 39 M.R.S.A. § 2(5)(B)." *Id.* at 1194, n. 3 (emphasis in original). NMC Homecare contends that, as a self-employed person, Brodeur was not under a "contract of hire" and therefore cannot be considered to be "concurrently employed" or to have an "employer" for purposes of subsection 2(2)(D). We note, however, that our purpose in analyzing the statutory definition of "employee" in *Harding* was not to determine whether Harding had an employer, but to determine whether his injury as a sole proprietor was covered by the Act.

A worker who is exempt from coverage under the Workers' Compensation Act may still have an "employer." Section 2(5) excludes several classes of workers from the definition of employee, including maritime workers, agricultural workers, close relatives of a sole proprietor who specifically waive protection of the Act and workers injured in employer-sponsored athletic events. *See* 39 M.R.S.A. §§ 2(5)(A)(1), (5), (6), 2(5)(C) (1989). While none of these workers are "employees" pursuant to section 2(5), all of these "non-employees" may have "employers" as a matter of common usage and common sense. Indeed, while the term "employee" is carefully circumscribed in subsection 2(5), the term "employer" is defined broadly to reach virtually all "private employers," including "corporations, partnerships and natural persons." 39 M.R.S.A. §§ 2(1), 2(1–A) (1989).

Subsection 2(5)(D) establishes that real estate brokerage agencies are not required to purchase workers' compensation coverage for their brokers who have a signed contract with the agency indicating the existence of an independent contractor relationship. L.D. 720, Statement of Fact (111th Legis.1983).[2]

---

**1.** Title 39 has been repealed and replaced by Title 39–A. *Maine Workers' Compensation Act of 1992*, P.L.1991, ch. 885, § A–7 (effective January 1, 1993). Because the proceeding was pending on the effective date of Title 39–A, however, this appeal is governed exclusively by former Title 39.

*Riley v. Bath Iron Works*, 639 A.2d 626, 627–28 (Me.1994).

**2.** The Statement of Fact provides that:

There is nothing in the legislative history of subsection 2(5)(D) that reflects an intent to prevent consideration of a real estate broker's earnings as concurrent wages. The fact that Brodeur may be an "independent contractor" does not mean that she has no employer. *See e.g., Bean v. Alrora Timber, Inc.*, 489 A.2d 1086, 1087 (Me.1985). Indeed, the Legislature has noted that real estate brokers are often "paid by and work . . . under an employment contract with the property seller." L.D. 720, Statement of Fact (111th Legis.1983). Title 32 M.R.S.A. § 13198 defines a "real estate broker" as "any person *employed* by or on behalf of an agency to perform brokerage and licensed by the commission as a broker." 32 M.R.S.A. § 13198(1) (1989) (emphasis added). This provision acknowledges that brokers also operate under contracts of "employment" with brokerage agencies.

Noting that Brodeur was not considered an "employee" by ERA Worden for federal income tax purposes, *see Internal Revenue Code*, 26 U.S.C. § 3508 (1994), and that real estate agents like Brodeur, who are treated as nonemployees for income tax purposes, are required to file self-employment income taxes, IRC §§ 1401–1403 (1994), NMC Homecare argues that Brodeur cannot have an "employer" for purposes of subsection 2(2)(D). As we noted in *Fletcher v. Haningotn Brothers, Inc.*, 647 A.2d 800, 803 n. 4 (Me.1994), however, "the Internal Revenue Code and the Maine Workers' Compensation Act were enacted for entirely different pur-poses," and therefore provisions of the tax code do not control our interpretation of subsection 2(2). We see no compelling policy in the tax code to preclude treating Brodeur as her own employer for purposes of calculating her concurrent weekly wage.[3]

As a matter of common usage, self-employed persons may be considered their own employer. *See Daigle v. Daigle*, 505 A.2d 778, 780 (Me.1986) (holding that a self-employed person is not required to give notice to the workers' compensation insurer within 30 days of an injury pursuant to 39 M.R.S.A. § 63, because, "the identity between the employee and employer is complete," and therefore the "employer" has *actual* knowledge of the injury). This concept of employee as employer is also reflected in the Workers' Compensation Act that permits a declaration by a self-employed person as an employer for purposes of workers' compensation coverage. *See* 39 M.R.S.A. § 2(5)(B) (1989), *repealed and replaced by* P.L.1991, ch. 885, § A–7 (effective January 1, 1993), *codified as* 39-A M.R.S.A. § 102(11)(B) (Supp.1994). We conclude that whether Brodeur was employed by a property seller, the real estate agency, or herself, she was employed by "2 or more employers" for purposes of subsection 2(2)(D).

NMC Homecare also suggests that the phrase "2 or more employers" in subsection 2(2)(D) reflects a legislative recognition that because employers are at a greater risk when an employee obtains noncovered con-

---

[t]he purpose of this bill is to clarify the status of real estate agents as independent contractors under the Workers' Compensation Act.

The determination of whether a worker is an employee or an independent contractor under the Act is both a question of law and a question of fact. *Timberlake v. Frigon & Frigon*, 438 A.2d 1294, at 1296 (Me.1982). Depending upon the organization and operating policies of a particular firm, one agency's sales staff might be determined to be employees while that of another agency might be found to be independent contractors. The possibility of case by case determinations may put firms in a difficult position when deciding whether to insure.

. . . .

There are strong policy reasons for taking this approach. First, unemployment compensation law, in Title 26, 1043, makes a similar

exemption. Second, under the federal tax laws, brokers are generally treated as independent contractors. Third, the real estate agent, unlike the typical employee, is paid by and works under an employment contract with the property seller. Under principles of agency law the agent's primary duty is to further the best interests of that seller. Finally, the real estate agent typically exercises independent judgment as to the time, place and manner of performing his duties with minimal control by the agency management.

L.D. 720, Statement of Fact (111th Legis.1983).

3. We note further that although Brodeur may be considered "self-employed" for purposes of calculating income tax, self-employed individuals may also be considered "employees" for federal tax treatment of pension and other benefit plans. IRC § 401(c)(1) (1994).

current employment, *see e.g., Harding,* 647 A.2d at 1194, it is not fair to include earnings from such employment in the average weekly wage. We find no support for this interpretation of legislative policy in the Act. Indeed, we note that there is no discussion of the purpose for the language "2 or more employers" in the legislative history of subsection 2(2)(D). *See* P.L.1929, ch. 300, § 2(IX)(d) (effective April 12, 1929). We note further that, at the time the concurrent wage provision was originally enacted in 1929, coverage under the Act was elective and the term "employer" included employers who had assented to coverage under the Act as well as those who had not. *See* R.S.1930, ch. 55, §§ 2(I) & (III). Therefore, the Legislature could only have contemplated that the phrase "2 or more employers" would extend to concurrent earnings of noncovered employees.

■ We have held that the "purpose of calculating an average weekly wage is to arrive at an estimate of the 'employee's future earning capacity as fairly as possible.'" *Fletcher,* 647 A.2d at 802 (citations omitted). Consistent with this purpose, the Legislature

has provided that when an employee is prevented by a work-injury from earning concurrent wages, those concurrent earnings must be included in the average weekly wage. 39 M.R.S.A. § 2(2)(D) (1989). In this case, the Board found that Brodeur is capable of earning $1,150.94 per week. The fact that Brodeur's concurrent employment may or may not be covered by the Act has no bearing whatsoever on whether she is capable of earning that income. *See* 2 A. Larson, *The Law of Workmen's Compensation,* § 60.32, at 10–766 (1994).[4]

The entry is:

Decision of the Workers' Compensation Board affirmed.

All concurring.

■

---

4. NMC Homecare also contends that, even if it was appropriate to consider Brodeur's concurrent earnings, the hearing officer in this case employed an erroneous method of calculation. We conclude, however, that any error in calculating concurrent wages disfavored the employee. Because Brodeur has not cross-appealed we need not address the contention.